## Sallie Couts v. G. A. Holland et al., Executors.

### Decided January 11, 1908.

**1.—Will—Power of Executors—Construction of Will.**

A will contained the following provision: "It is my further desire and will that all doubtful questions of construction in the interpretation of said will be conclusively determined according to their best judgment by said trustees without resort to the courts." Held, under the power thus conferred, the trustees or executors named in the will had the power to determine what property was embraced in and referred to by the provisions of the will, and hence to determine the question whether or not it was the intention of the testator to dispose of the community estate of himself and his surviving wife as well as of his separate estate.

**2.—Same—Exercise of Power—Conclusiveness.**

When an arbiter honestly and in good faith exercises his power and passes upon a doubtful question, either of law or fact, his decision will not be revised by a court, notwithstanding the court, whose interposition is invoked, may think his interpretation is erroneous. Rule applied to the interpretation of a will by executors, in whom the power to interpret the same was vested by the terms of the will.

**3.—Same—Election to Take Under.**

In order to create the necessity for an election to take under a will there must appear a clear, unmistakable intention on the part of the testator to

dispose of property not his own.  Evidence considered, and held to manifest such intention.

Appeal from the District Court of Parker County.. Tried below before Hon. J. W. Patterson.

*A. T. Watts* and *D. M. Alexander,* for appellant.—Where the language of a will is plain and without ambiguity, using only general terms of description of the property as a whole, without devising specific tracts or property, the will does not convey the whole of the community estate, but only testator's half.  Revised Statutes, art. 5334; Carroll v. Carroll, 20 Texas, 740; Moss v. Helsley, 60 Texas, 435; Crosson v. Dwyer, 9 Texas Civ. App., 482; Haley v. Gatewood, 74 Texas, 284-5; Gibony v. Hutcheson, 20 Texas Civ. App., 581; Sutton v. Harvey, 24 Texas Civ. App., 26; In re Gilmore (Cal.), 22 Pac., 655-6; Walker v. Bobbitt (Tenn.), 88 S. W., 327-8; Fuller v. Yates, 8 Paige Ch., 325 (Bk. 4 N. Y. Ch. Rep., 446); 1 Pom. Eq. Jur., secs. 472-3-4.

Where a will does not purport to convey the community estate of the survivor, but only the estate of the testator, the executors have neither authority nor power to bring within the terms of the will the survivor's half of the community property, because, being property outside of the will, it is a matter not submitted to them for determination by the instrument from which they derive their authority.  An award must be confined to the subject matter submitted.  Fortune v. Killebrew, 86 Texas, 177; Pray v. Belt, 1 Pet., 679-80; American Board v. Ferry, 15 Fed. Rep., 700; McBrayer v. McBrayer, 26 S. W., 185.

The District Court erred in its conclusions of law herein in holding that defendants having construed the will of J. R. Couts as showing the intention of said Couts to dispose of plaintiff's community property, and that such construction by the executors was conclusive and put plaintiff to an election, because such construction and interpretation placed upon said will was grossly erroneous, unreasonable and obviously unjust, and was wholly unwarranted by the terms of said will or the circumstances surrounding its execution, and the court should have construed said will, regardless of the construction placed upon it by the executors.  Same authorities, and Brown v. Milbank, 5 Abb. Prac., 28.

In order to create the necessity for an election there must appear a clear, unmistakable intention on the part of the testator to dispose of property not his own.  Fuller v. Yates, 8 Paige Ch., 325 (Bk. 4 N. Y. Ch. Rep., 446); Sanford v. Jackson, 10 Paige Ch., 266 (Bk. 4 N. Y. Ch. Rep., 971); Beach on Wills, sec. 156; Ballinger, Com. Prop., sec. 240; Konvalinka v. Schlegel, 104 N. Y., 125 (58 Am. Rep., 494); 6 Am. & Eng. Enc. Law, 346; 4 Kent Com., 58.

An annuity for life to survivor does not create a necessity for an election.  Crosson v. Dwyer, 9 Texas Civ. App., 482; Horstman v. Flege, 65 N. E., 202 (N. Y.); Rivers v. Gooding, 21 S. E., 310 (S. C.); Fuller v. Yates, cited supra.

The creation of a trust does not call for an election. Moss v. Helsley, 60 Texas, 435; Crosson v. Dwyer, 9 Texas Civ. App., 482; Rivers v. Gooding, 21 S. E., 310; Sanford v. Jackson, 10 Paige Ch., 266.

*C. K. Bell,* for appellees.—The District Court did not err in its conclusion of law in holding that plaintiff was not entitled to recover because by the plain terms of the will of J. R. Couts, it was the manifest intention of the testator to give to appellant the bequests specified in the will out of the community property of himself and of appellant as well as of his separate property. Smith v. Butler, 85 Texas, 130; Chace v. Gregg, 88 Texas, 555; Pryor v. Pendleton, 92 Texas, 384; Carleton v. Goebler, 94 Texas, 97; Moody v. Smoot, 78 Texas, 119; In re Gorden, 64 N. E., 753; In re Stewart, 15 Pac., 445.

The District Court did not err in holding that inasmuch as J. R. Couts, by his will, had provided that all doubtful questions of construction in the interpretation of said will should be conclusively determined according to their best judgment by the executors and trustees appointed by said will, without resort to the courts, and that inasmuch as the said executors and trustees in the exercise of their best judgment had interpreted the will to the effect that thereby it was the intention of the testator to convey to the executors named therein all of the community property of the testator and of appellant, that such interpretation and construction was conclusive upon the court. Pray v. Belt, 1 Pet., 679, 7 Law. ed., 309; Wait v. Huntington, 40 Conn., 9; Moore v. Harper, 27 W. Va., 362; American B. of C. v. Ferry, 15 Fed., 696.

ROWLAND, SPECIAL ASSOCIATE JUSTICE.—Mrs. Sallie Couts brought this suit against G. A. Holland and I. W. Stephens, executors of the will of her deceased husband, J. R. Couts, for the purpose of recovering certain legacies bequeathed to her by said will.

The defense was that the will by its terms attempted to dispose of the whole of the community estate of testator and his said wife, as well as of his separate estate; that his widow was, therefore, put to her election whether she would take her half of the community estate and renounce the legacies given her by the will, or accept the provisions made in the will for her benefit and renounce her community rights; that she had elected to take her half of the community; that she was thereby debarred and estopped from claiming anything under the will; and, furthermore, that in pursuance of the authority given said executors and trustees by the following provision in the will, to wit, "It is my further desire and will that all doubtful questions of construction in the interpretation of said will be conclusively determined according to their best judgment by said trustees without resort to the courts," the said executors had in good faith and in the exercise of their best judgment construed said will as manifesting an intention to dispose of the

whole of the community estate, which construction was, under the circumstances, binding upon the courts, rendering unnecessary any further and independent inquiry into the meaning of the language employed in the will.

The case was tried before the court without a jury and judgment rendered in favor of the defendants. The trial court filed findings of fact and conclusions of law, which we approve and adopt.

The will of J. R. Couts was as follows:

"State of Texas, }
County of Parker. }

"In view of the uncertainty of life, and in order to make a suitable disposition of my property at my death, I hereby make and publish this my last will and testament. I desire first of all that, my body shall be decently buried and that a suitable monument be erected over my grave, and that my just debts be promptly paid.

"I desire that no other or further proceedings be had in the Probate Court after my will shall have been probated and recorded and after my executors shall have returned an inventory and appraisement and list of claims of my estate.

"I desire that my surviving wife be well provided for out of my estate so long as she may live, and also that her aged parents may be taken care of after her death, if they or either of them should survive her. I desire that my estate, after these and other purposes named below shall have been accomplished, be ultimately and equally divided between my grandchildren, subject to the terms and conditions named below.

"I therefore devise and bequeath all the money and other property, both real and personal, of which I may die seized and possessed, including every right of action to which I may be entitled, to I. W. Stephens and G. A. Holland as my executors and trustees and their successors as herein provided to be held in trust for the purposes and period of time herein named, and to be managed and disposed of by them as follows:

"1.  The said trustees shall keep together, manage and control the entire estate so devised and bequeathed for a period of twenty years next after my death, but shall be authorized and required to make sales, either public or private, of any of said property when required or deemed necessary by them to carry out the purposes of this will, the terms of such sales to be left to their discretion, and they shall have the power and it shall be deemed their duty to loan on security deemed sufficient by them or invest all monies coming to their hands from time to time belonging to said estate, provided the same may not be needed for the purposes herein specified.

"2.  Said trustees shall immediately, or at least within a reasonable time after the probate of this will and after returning an inventory and appraisement of said estate, provide my wife with a suitable home in Weatherford, Texas, duly furnished, and with a horse and buggy and milch cow, all to her reasonable satisfaction, and to pay to her in cash $125 per month so long as she

may live, and in case she should die before her parents, or either of them, said trustees shall pay to the parents, or parent so surviving, $50 in cash, so long as they may live, or either of them may live.

"3. Said trustees shall pay to my granddaughter, Martha Roberta Putman, when she marries or becomes 21 years of age, $3,000 in cash, and convey to her all those tracts of land owned by me situated in Parker and Hood Counties, just west of the land deeded by me to Susan Grant, and containing about 7,500 acres.

"4. Said trustees shall see that my daughter, Martha Putman, and my son, J. R. Couts, are properly cared for, and may pay or set aside whatever they may deem necessary, sufficient and proper for that purpose.

"5. After all my just debts have been paid, and all my reasonable expenses incident to the management of said estate, including reasonable compensation for said trustees for their services from year to year, shall have been deducted, and after the specific charges made against the estate in items 2, 3 and 4, shall have been paid and provided for, the remainder of my estate shall, at the expiration of twenty years from my death, be disposed of by my said trustees as follows: One-fourth part thereof shall go to the trustees of Weatherford College as an endowment for that institution of learning, and the rest shall be equally divided between my grandchildren then living, who shall take *per caput* and not *per stirpes;* but if any of my grandchildren shall then be dead, leaving child or children surviving, such child or children shall take *per stirpes* the same and be treated in the division as a living grandchild.

"6. Should either of said trustees named above die before the expiration of said twenty years, or before this trust is fully executed the survivor shall have the power, with the concurrence of the county judge of Parker County, to appoint in writing who shall succeed to the same rights, and shall have the same power as the original trustee.

"7. My said trustees or executors shall not be required to give bond, and no administration of my estate shall be in the Probate Court, but said trustees and executors shall be deemed fully authorized and qualified to execute this trust independent of the court, when this will shall have been probated and recorded and an inventory and appraisement and list of claims of my said estate shall have been returned as provided by law in such cases.

"8. Should any of my children or their husbands bring suit to set aside this will, it is my desire and will that the entire remainder of my estate, after the payment and satisfaction of all debts and expenses and charges specified in items 2, 3 and 4 be vested in and turned over to the trustees of said college as an endowment, and in case any grandchild shall bring suit, that his or her share shall likewise vest in said college trustee, and it is my further desire and will that all doubtful questions of construction in the interpretation of said will be conclusively determined according to their best judgment by said trustees without resort to the courts.

Having thus disposed of the accumulations of property which in course of a lifetime God in His providence has permitted me to make, I sign this as my last will and testament, revoking any and all other wills previously made by me.

"Witness my hand this 29th day of July, 1902.

"(Signed) J. R. Couts, Testator."

In 1902, when said will was made, J. R. Couts was 69 years old, and had married appellant, his second wife, in 1895. He died in 1904. At the time of making the will, and also at the time of his death, he owned a large separate estate worth about $250,000. At the time of making the will the community property of himself and said Sallie Couts amounted to between $161,000 and $200,000; but his debts, which were all community debts, amounted then to about $130,000, for which he was primarily liable and about $150,-000 for which he was secondarily liable as indorser for the Bailey County Cattle Company. At the time of his death his separate estate and the community estate remained substantially as they were at the making of the will, except that his liabilities had been reduced to about $125,000.

J. R. Couts was a careful, prudent business man of more than ordinary ability, and he knew the value, character and extent of his property, both separate and community, and was accustomed to use, control and manage both his separate and community property as his own, and the title to all the property accumulated by him during his marriage with appellant was taken in his name.

All legal formalities having been complied with, appellees, Holland and Stephens, as executors and trustees under the will, took charge of the estate, both separate and community, and have ever since held and managed the same. With money derived mostly from the community estate they have paid off nearly all of said $125,000 of community debts, and have in hand community funds with which to pay the balance. Mrs. Couts has demanded her community rights, and has received from said executors on account of her community rights and interest the sum of $34,382 in cash and notes. The house and lot in Weatherford occupied by her and her husband at the time of his death, and which was his separate property, has been occupied and used by her ever since. The real estate specifically mentioned in paragraph three of the will and directed to be conveyed to Martha Roberta Putman was the separate property of Couts.

By appellant's first assignment of error and the propositions thereunder the contention is made that, though the executors are made the arbiters to determine conclusively "all doubtful questions of construction in the interpretation of the will," still the question of the scope of the will—of what property it applied to and what property it did not apply to—is a matter not submitted to these arbiters by the testator, and is, therefore, a matter upon which their decision is not binding. At least a majority of us are unable to agree with this contention. We think the intent of the testator

is clear that, wherever there was doubt as to the meaning of the instrument, that doubt was to be settled by the executors and by no one else. The power to determine what the will means, in its every part and provision, involves as well the power to decide what property it operates upon as it does the power to decide just what disposition is intended to be made of property clearly within its operation. A doubtful question of · construction may as easily arise in the one case as in the other.

The second principal contention upon which appellant relies for a reversal is embraced in her second, third, fourth and fifth assignments of error, and is, in substance, that the decision of the executors construing the will as attempting to dispose of the whole community estate was grossly erroneous, unreasonable, obviously unjust and wholly unwarranted and therefore not binding on the courts. The authorities sustain the rule stated in appellant's proposition under the third and fourth assignments as follows: "In order to create the necessity for an election there must appear a clear, unmistakable intention on the part of the testator to dispose of property not his own." Carroll v. Carroll, 20 Texas, 740; Moss v. Helsley, 60 Texas, 435; Haley v. Gatewood, 74 Texas, 284. But the executors by their construction of the will have said that there does appear from this will, read in the light of the surrounding circumstances as shown in this record, a clear, unmistakable intention to dispose of the community estate as an entirety. Can we say that this decision of the tribunal to which the testator himself saw fit to commit the authoritative interpretation of his will was obviously and wholly without foundation? We have concluded that we can not. The general scheme and purpose of this will; the trust created by its terms; the direction that testator's entire estate be kept together, managed and controlled for 20 years by the trustees; the existence of a large community indebtedness calling for an efficient handling of the community assets in order to meet it; the nature of the provisions made for the widow and her parents; and the manner in which Couts was accustomed to deal with his property during a long and active business career—all these things are sufficiently persuasive to, at least, save the trustees' construction from the charge of being obviously erroneous. Carleton v. Goebler, 94 Texas, 97; In re Gorden, 64 N. E., 753; In re Stewart, 15 Pac., 445. In the case last cited the Supreme Court of California held that the widow was put to her election under circumstances very little stronger than those existing in this case. The following excerpt from the opinion is instructive and is somewhat in point here:

"When read together, the provisions of the will are the best expression—short of a direct statement to that effect—that he was dealing with the whole of the community property under the phrase 'all my estate.' Every clause in the will bears a clear and indisputable badge of that intention. He dealt with the property just as he had been accustomed to deal with it through a long, active, and successful business life; just as he had in accumulating and disposing of the property during his lifetime, without consulting

his wife, or asking her to join with him in any conveyance. He uses the phrase 'my estate' in the sense that he had been accustomed to use it all his life. It *was* his estate. He could dispose of it absolutely without the consent of his wife during his life, and he thought undoubtedly that he could do so, and that he was doing so, by his will.

"It is to be regretted that the presumption which prevails in New York and other States, where the right of dower exists, was ever applied to the construction of wills in this State. In those States, in order to cut off the right of dower, the wife must join in the conveyance. With us there is no estate in dower (section 173, Civil Code); and the husband is taught, through a long and active business life, to regard the community property as his own, to speak of it as his own, and to dispose of it as his own. It is true that the presumption referred to as applicable in other States has been adopted here, and it is perhaps well that we should adhere to it; but, where the intention of the testator is so clearly expressed as it is in the will before us, that presumption must give way. So long as our laws recognize the right of the husband to dispose of his property by will, the courts should strive to carry out the real intention of the testator, and for that purpose give greater weight to the natural and ordinary meaning of the language used in the will than to mere presumptions of law, which are intended as aids for the construction of wills in doubtful cases only."

From all the foregoing, it seems clear, to at least the majority, that the trustees' decision was not beyond their jurisdiction and was not unreasonable. It is unnecessary for us to decide whether, as an original proposition, we would have construed the will as they have. The validity of the provision in the will committing its construction to the executors is not questioned by appellant, and is upheld by several cases. Pray v. Belt, 1 Pet., 679, 7 Law. Ed., 309; American Board v. Ferry, 15 Fed. Rep., 696; Wait v. Huntington, 40 Conn., 9; Moore v. Harper, 27 W. Va., 362; Boger's Appeal, 10 Pa. St., 441. In American Board v. Ferry, 15 Fed., 696, a similar provision in a will was involved, and the court said at page 700: "The rule, as we conceive it, is when an arbiter honestly and in good faith exercises his power and passes upon a doubtful question, either of law or of fact, his decision will not be revised by a court, notwithstanding the court, whose interposition is invoked, may think his decision erroneous." In this case the good faith and honesty of the decision made by Mr. Holland and Judge Stephens are not questioned.

This disposes of all the assignments of error, except the sixth and seventh, and they are not sustained by the record and are overruled.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*

Justice Stephens disqualified and not sitting.
Writ of error refused.